**Opinion filed December 18, 2025**



# In The

# Eleventh Court of Appeals

_____

## No. 11-25-00176-CV

_____

## IN THE INTEREST OF S.G. AND K.C., CHILDREN

**On Appeal from the 446th District Court**
**Ector County, Texas**
**Trial Court Cause No. E-24-042-PC**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from a final order in which the trial court terminated the parental rights of the mother and father to their children, S.G. and K.C.[1]  *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2024).  Only the father appealed.  In three issues on appeal, Appellant challenges the sufficiency of the evidence to support the trial court's termination findings under Section 161.001(b)(1)(D), (E), and (O)[2] of the Texas Family Code, and that

---

[1]We use initials to refer to the children.  *See* TEX. R. APP. P. 9.8(b).

[2]The legislature amended Section 161.001(b)(1) and repealed subsection (O) effective September 1, 2025.  Act of May 16, 2025, 89th Leg., R.S., ch. 211, § 2, 4, 2025 Tex. Sess. Law Serv. 573, 574–75.  This change in the law only applies to suits affecting the parent-child relationship that are pending

termination of his parental rights is in the children's best interest. *See id.* § 161.001(b)(1)(D), (E), (O), (b)(2). We affirm the trial court's order.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001(b). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the children. *Id.* § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children, who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the children's removal under Chapter 262 for abuse or neglect. *See id.* § 161.001(b)(1)(D), (E), (O). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2).

---

on or after the effective date of this statutory amendment. *Id*. § 3. Thus, we apply the law in effect at the time the suit was pending below.

2

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied). Because a trial court conducting a de novo hearing "may also consider the record from the hearing before the associate judge," we may do so as well if it is included in the appellate record, as it is here. *See* FAM. § 201.015(c) (West 2020); *In re A.L.M.-F.*, 593 S.W.3d 271, 277 (Tex. 2019) ("[R]eview under [S]ection 201.015 is not entirely independent of the proceedings before the associate judge.").

With respect to the best interest of the children, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re J.S.*, 687 S.W.3d 541, 547 (Tex. App.—Eastland 2024, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best

4

interest analysis evaluates the best interest of the children, not the parent. *J.S.*, 687 S.W.3d at 548; *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the child's best interest. *J.S.*, 687 S.W.3d at 548; *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

### The Evidence Presented at Trial

The Department learned of Appellant's and the mother's violent relationship in November 2023 while the mother and seven-month-old S.G. were living in a shelter for family violence victims. The mother, who was pregnant with K.C. at the time, began participating in family-based safety services (FBSS)[3]; the Department's attempts to contact Appellant were unsuccessful. The mother moved with S.G. to a

---

[3]"Family-based safety services are protective services provided to a family whose children are not in the conservatorship of the Department." 40 TEX. ADMIN. CODE ANN. § 700.710 (2021). The Department's Child Protective Services Division provides family-based safety services to families and children "to: (1) protect the children from abuse and neglect; (2) help the family reduce the risk of future abuse or neglect; and (3) prevent the removal of the children from their home." *Id.*

second shelter in February 2024, gave birth to K.C. the following April, then told her FBSS caseworker in May 2024 that she was moving with the children to Louisiana. Despite the ongoing concerns for the safety of the children, the Department was forced to close its case.

In June 2024, a month after the mother left the shelter with the children, the Department received another report that Appellant assaulted the mother with the children present. Department Investigator Jenafur Guerrero-Warren contacted the mother, who advised that she and the children were in Appellant's trailer when he began to have sex with his third child's mother, Shonbreka Armstrong, in the bed where S.G. was sleeping. When the mother took S.G. from the bed, Appellant grabbed the mother's neck and began to strangle her while Armstrong encouraged his assaultive conduct.

When the mother left the trailer with the children, the Department arranged their stay in a shelter. The mother also agreed to a safety plan, and "said she would keep herself and the children away from [Appellant]." But a week later, the mother returned to Appellant's trailer with the children and was discharged from the shelter.

Guerrero-Warren visited Appellant's trailer, which had "a lot of debris on the floor," clothes that were "crinkled up" with dried liquid, "[b]oxes, expired foods," and "[t]here was a very strong odor of body odor and trash." When she spoke to Appellant about the Department's concerns, "[h]e was very upset and yelling over [her]." Following futile efforts to help the parents improve their home environment, the Department sought and was granted temporary managing conservatorship of the children.

The Department created family plans of service for Appellant and the mother. As part of his service plan, Appellant was required to demonstrate that he could provide the children with safe and stable housing, submit to random drug testing, and complete parenting classes, anger management, individual counseling, and the

batterer's intervention and prevention program (BIPP) to address the ongoing domestic violence in his relationships. Appellant stopped attending counseling after just four sessions. Appellant likewise informed the BIPP course instructors "that he did not feel that he needed the class."

The final termination hearing commenced on June 24, 2025. The mother did not contest the termination of her parental rights under Section 161.001(b)(1)(O) for her failure to comply with her court-ordered service plan requirements. In support of its recommendation to terminate Appellant's parental rights, the Department presented the testimony of four witnesses, including Appellant. Appellant testified that he was employed as an oilfield worker and split his time between living in Odessa and Lubbock. Shortly before trial, he sold his trailer in Odessa and stayed in a "man camp" while there for work. The mother, who has "always lived with [Appellant]" since they met, lived with him in his Lubbock apartment.

Appellant denied the allegations of assault that led to the children's removal, and averred that he has never been involved in family violence. When asked about the physical altercations involving him, the mother, and Armstrong over the past several years, he referred to them as "just fighting and working something out," and "[did] not consider it to be domestic violence." He discussed one altercation between him and Armstrong in December 2024 during which he "push[ed] her," and "grab[bed] her by the hair [to] pull her away." He claimed to be defending himself because Armstrong locked him out of their hotel room, "stole [his] gun, and [he] was trying to get it back."

Appellant was also questioned about two instances in March 2025: one between the mother and Armstrong, and another between Armstrong and Appellant. The first occurred in his Lubbock apartment where he was living with the mother. Armstrong arrived with their son and "needed somewhere stable to stay." Despite the history of violence and ongoing tension between the mothers of his children,

Appellant let Armstrong in and made no attempt to keep the peace. "[T]hey're grown," he reasoned, so he let them "roll[] around [o]n the floor punching, kicking, scratching, and biting each other" while his infant son was present.

Later that month, Armstrong called police to report that Appellant pushed her out of his trailer onto the ground, punched, slapped, and choked her. Their son was left unattended and unrestrained in the car during the assault and fell out of his car seat. Appellant denied assaulting Armstrong and accused her of being the aggressor. According to Appellant, the mother and Armstrong just "like to say" that he choked them: "That is their famous line . . . if you even attempt to defend yourself, if . . . they hit you first and you push them back." He conceded:

> [M]y hands may have hit . . . their neck pushing them, removing them from me. I mean, they're both strong women, extremely strong, so I do have to use force to defend myself . . . so they might consider it, "Oh, you hurt me. You put your hands on me."

As recent as May 2025, Appellant reportedly assaulted the mother at his Lubbock apartment, followed her and her friends as they drove away, and attempted to run them off the road. Appellant refuted the allegations; he testified that the mother and her friends were disrespectful and abusive toward him as they left his apartment. Irritated and "on edge," he followed them in his car, "cornered them at the gas station," and "hit the [car] window" when they refused to roll it down.

Appellant testified that his goal was "to get [the children] back and be able to just start over." When asked where the children would live if they were returned to him, Appellant responded: [T]hat's a tough question . . . I was expecting them to be taken care of by their mom and stay wherever I provided for the kids and their mom while I work."

Department caseworker Christi Wooten testified that the children were placed with their maternal grandmother following removal, and she is willing to adopt them. Wooten opined that due to Appellant's refusal to take accountability or address the

reasons for removal, he was unable to ensure the safety of the children. As such, it was in the children's best interest to remain in their grandmother's care.

At the conclusion of the hearing, the trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), and (O), and found termination to be in the best interest of the children. *See* FAM. § 161.0001(b)(1)(D), (E), (O), (b)(2). This appeal followed.

*Section 161.001(b)(1)(D) and (E) – Endangerment*

In his first issue, Appellant challenges the trial court's findings that he endangered the children. *See id*. § 161.001(b)(1)(D) and (E). Although only one statutory ground is necessary to support termination, appellate courts must address a parent's challenges to a trial court's findings under subsections (D) or (E), as they may have implications for the parent's rights to other children. *See* FAM. § 161.001(b)(1)(M); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law considerations with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either ground). Thus, if we conclude that the evidence is legally and factually sufficient to uphold the trial court's finding as to either subsection (D) or (E), we need not address the remaining subsections. *See* FAM. § 161.001(b)(1); TEX. R. APP. P. 47.1. And when the evidence pertaining to both subsections (D) and (E) is interrelated, as it is here, we may conduct a consolidated review of the trial court's endangerment findings. *See In re A.L.S.*, 660 S.W.3d 257, 263–64 (Tex. App.—San Antonio 2022, pet. denied); *In re J.D.*, 436 S.W.3d at 114; *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.).

The statutory endangerment grounds require clear and convincing proof that the parent has: "(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of

the child," or "(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." FAM. § 161.001(b)(1)(D), (E); *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014). "[E]ndangerment encompasses a larger array of conduct that 'expose[s a child] to loss or injury' or 'jeopardize[s]' the child." *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The term means "more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment," *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012), but "does not require actual harm," *R.R.A.*, 687 S.W.3d at 277 (citing *Boyd*, 727 S.W.2d at 533).

To terminate a parent's rights for endangerment under Subsections (D) or (E), the "parent's endangering conduct need not 'be directed at the child,'" nor must "the child actually suffer[] injury." *R.R.A.*, 687 S.W.3d at 277 (quoting *Boyd*, 727 S.W.2d at 533); *In re C.E.*, 687 S.W.3d 304, 310 (Tex. 2024). "[T]ermination under [subsection] (D) requires that the child's environment is a source of endangerment, and the parent's conduct may create that dangerous environment." *C.E.*, 687 S.W.3d at 310. "A parent's drug use, violence, or other abuse may make the child's environment endangering to the child." *In re J.S.*, 675 S.W.3d 120, 128 (Tex. App.—Dallas 2023, no pet.). "A parent acts 'knowingly' when the parent is aware that the environment creates a potential danger to the child but the parent disregards that risk." *Id.* Because conditions or surroundings cannot endanger children unless the children are exposed thereto, the relevant time frame for evaluating subsection (D) is before the children's removal. *J.W.*, 645 S.W.3d at 749.

Endangerment under subsection (E), in contrast, focuses on the parent's conduct, and whether the endangerment of the children's well-being was the direct result of the parent's acts, omissions, or failures to act. *In re J.S.*, 687 S.W.3d 541, 550 (Tex. App.—Eastland 2024, no pet.). Termination under subsection (E) must

10

be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being." *R.R.A.*, 687 S.W.3d at 277. A parent's actions prior to and after the children's removal may show an endangering course of conduct. *See J.S.*, 687 S.W.3d at 550 ("[E]ndangering conduct may include a parent's actions before the child's birth and may relate to the parent's actions while the parent had possession of other children."). "Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being." *In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied); *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (Illegal drug use and offenses that occurred before the child's birth may be considered as part of a course of conduct that endangers a child.).

Here, the Department intervened due to allegations that Appellant assaulted the mother while the children were in proximity and had a history of abusing the mother. They lived in Appellant's trailer prior to entering the Department's care, which was cluttered with expired food, trash, and clothing. *See In re A.L.*, 545 S.W.3d 138, 148 (Tex. App.—El Paso 2017, no pet.) (parent's "extraordinarily unsanitary" home is relevant in determining the child's emotional and physical needs and emotional and physical dangers to the child); *In re L.W.*, No. 01-18-01025-CV, 2019 WL 1523124, at *18 (Tex. App.—Houston [1st Dist.] Apr. 9, 2019, pet. denied) (mem. op.) ("[T]he condition of mother's home alone was endangering to the children."). Moreover, Appellant reportedly assaulted both the mother and Armstong on multiple occasions while the case was pending and permitted the

11

mother and Armstrong to fight each other. Although Appellant denied the allegations, the trial court was permitted to disbelieve his testimony and credit the evidence demonstrating that he was the aggressor. *See J.F.-G.*, 627 S.W.3d at 311–12 (appellate standard of review "does not dispel, however, the deference that an appellate court must grant to the factfinder, who hear the witnesses and evaluated their credibility"); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). The evidence of Appellant's propensity for violence and abusive behavior in the presence of the children supports the trial court's endangerment finding. *See In re D.J.W.*, 624 S.W.3d 60, 67 (Tex. App.—El Paso 2021, no pet.) ("[D]omestic violence may support a finding of either environment or course-of-conduct endangerment."); *In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.) ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." (quoting *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.))).

Assuming arguendo that Appellant was merely defending himself during each altercation, his acts and omissions nevertheless created conditions or surroundings that endangered the physical and emotional well-being of the children. It is undisputed that the children were removed from a tumultuous home environment in which they were frequently exposed to physical violence between their parents. *See In re O.E.R.*, 573 S.W.3d 896, 906 (Tex. App.—El Paso 2019, no pet.) (parent's choice to continue relationship with violent or abusive partners can create an endangering environment for children). Appellant portrayed the mother as an abusive drug user who has nearly "fall[en] on top of [the] kids" while attacking him. He recounted several domestic disputes that resulted in police being called due to the "noise" and "commotion," and acknowledged that those situations created an unsafe environment for the children. Yet, he continued residing with the mother and permitting Armstrong to occasionally stay with him. The evidence thus established

that Appellant was aware of the dangerous conditions or surroundings and failed to remove himself and the children therefrom, which can support termination under subsection (D). *See In re G.M.*, 649 S.W.3d 801, 809–10 (Tex. App.—El Paso 2022, no pet.) (mother endangered the child by failing to remove her from an abusive situation); *In re S.L.L.*, No. 13-19-00442-CV, 2020 WL 103862, at *6 (Tex. App.—Corpus Christi Jan. 9, 2020, no pet.) (mem. op.) (willingness to tolerate and excuse erratic behavior from a romantic partner at expense of child's physical and emotional well-being may be considered in endangerment analysis).

In addition to Appellant's failure to protect his children, he refused to address the dangers to which they were exposed. *See In re E.P.C.*, 381 S.W.3d 670, 683–84 (Tex. App.—Fort Worth 2012, no pet.) (The parent's failure to provide proper nutrition, leaving the child alone, and his lack of remorse for doing so was evidence of endangerment.). Rather than changing his behavior, Appellant continued engaging in conduct that culminated in physical abuse. And despite his ongoing volatile relationship with the mother, he intended for her to be the children's primary caretaker upon their return. On this record, the trial court could have formed a firm conviction or belief that Appellant endangered the physical or emotional well-being of the children and would continue doing so if they were returned to him. *See In re M.S.*, 662 S.W.3d 620, 630–31 (Tex. App.—Beaumont 2023, pet. denied) (In addition to "domestic violence concerns," the father left his children with the mother "when he knew something was wrong with her."); *In re K.G.*, No. 11-24-00236-CV, 2025 WL 477650, at *5–6 (Tex. App.—Eastland Feb. 13, 2025, no pet.) (mem. op.) ("A parent's decision to leave a child in the care of a known drug user subjects the child to a life of uncertainty and instability that endangers the child's physical and emotional well-being."); *E.G. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00469-CV, 2022 WL 17970222, at *9 (Tex. App.—Austin Dec. 28, 2022, no pet.)

(mem. op.) (The father endangered the child by leaving the child with the mother, whom he knew to be a methamphetamine user.).

Based on the foregoing, the evidence is sufficiently clear and convincing such that a reasonable factfinder could have formed a firm conviction or belief that Appellant "knowingly allowed the children to remain in an endangering environment" and "knowingly placed [the children] with persons who engaged in [endangering] conduct." FAM. § 161.001(b)(1)(D), (E); *see J.W.*, 645 S.W.3d at 750.

Accordingly, we overrule Appellant's first issue. In light of our disposition, we need not address Appellant's second issue in which he challenges the trial court's finding under subsection (O). *See* TEX. R. APP. P. 47.1; *J.S.*, 687 S.W.3d at 551.

*Best Interest of the Children*

In his third issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the best interest of the children.[4] "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72). We reiterate that the trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the factfinder so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving the requisite due deference to the trial court, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could

---

[4]We note that the Texas Rules of Appellate Procedure require an appellant to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "Bare assertions of error, without argument or authority, waive error." *In re A.B.*, 646 S.W.3d 83, 96 (Tex. App.—Texarkana 2022, pet. denied) (quoting *McKellar v. Cervantes*, 367 S.W.3d 478, 484 n.5 (Tex. App.—Texarkana 2012, no pet.)). Appellate courts "have no duty to brief issues for an appellant." *Id.* (quoting *In re A.E.*, 580 S.W.3d 211, 219 (Tex. App.—Tyler 2019, pet. denied)). Appellant, who is represented by counsel on appeal, provided no specific argument, analysis, nor legal authority to support his contentions. We address his third issue despite such inadequate briefing.

have formed a firm belief or conviction that termination of Appellant's parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

Evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). In other words, the absence of evidence regarding some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child's safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Nov. 16, 20156, pet. denied) (mem. op.). Consequently, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child." *J.S.*, 687 S.W.3d at 552 (quoting *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.)). And evidence that is relevant to Section 161.001(b)(1) termination grounds may be probative of the child's best interest. *See E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013) (citing *C.H.*, 89 S.W.3d at 28).

The clear and convincing evidence that Appellant endangered the children—his unsanitary living conditions upon removal and his ongoing violent relationships with the mother and Armstrong—also support the trial court's best interest determination. *See J.W.*, 645 S.W.3d at 742 (considering the parent's unstable and uncertain living situation in upholding the trial court's best interest finding); *O.E.R.*, 573 S.W.3d at 905 ("Physical violence in the home leads to an unstable and unpredictable environment for children."); *A.L.*, 545 S.W.3d at 148 (considering parent's "extraordinarily unsanitary" home in best interest analysis). Rather than making necessary changes for his children's safety, Appellant refused to accept responsibility for his children's removal and continued his relationships with the

mother and Armstrong. Appellant's actions suggest an inability or unwillingness to achieve the permanence and stability that his children need to thrive. *See In re J.A.R.*, 696 S.W.3d 245, 257 (Tex. App.—Houston [14th Dist.] 2024, pet. denied) ("Stability and permanence are paramount in the upbringing of children."). Given Appellant's knowledge of the dangerous living conditions in which he placed the children and refusal to improve the safety thereof permit the rational inference that he was, at minimum, indifferent to the children's physical health and emotional well-being. Such "evidence of parental indifference weighs heavily in favor of a factfinder's finding that termination is in [the children's] best interest." *In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.); *see also In re A.M.R.*, 652 S.W.3d 117, 125 (Tex. App.—Waco 2022, pet. denied) (considering the parent's failure to address "anger issues, violent tendencies, poor relationship choices, . . . and instability in homes and employment" in best interest determination). The trial court could have rationally inferred that relinquishing the children to Appellant's care would subject them to a life of uncertainty and instability, which is contrary to their best interest. *See In re E.M.*, No. 11-24-00310-CV, 2025 WL 1240792, at *10 (Tex. App.—Eastland Apr. 30, 2025, no pet.) (mem. op.) (citing *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied)).

Appellant's minimization of culpability coincides with his failure to complete the tasks and services required by his service plan, which further supports the trial court's best interest finding. *See E.C.R.*, 402 S.W.3d at 249 (a parent's failure to complete court-ordered services can support a best interest finding); *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."). In particular,

16

Appellant refused to complete individual counseling, BIPP, and anger management because he did not believe he needed those services. He also failed to submit to four required drug tests, missed ten scheduled parent-child visits, and exhibited concerning parenting behavior during the visits he attended. For example, Appellant put one of the children into a prairie dog hole twice. When the visitation supervisor explained the dangers of putting an infant into a disease-carrying wild animal's home, Appellant initially denied doing so, then said "that the child liked it." *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with his family service plan support a finding that termination is in the best interest of the child.").

Finally, the Department's plan for the children was to be adopted by their grandmother. This stood in stark contrast to Appellant's only plan for the children, which was to reside with the mother, whose parental rights were terminated prior to trial. *See J.D.*, 436 S.W.3d at 119–20 ("The fact finder may compare the contrasting plans for a child by the parent and the Department and consider whether the plans and expectations of each party are realistic or weak and ill-defined."). As set forth above, the mother lived with Appellant while the case was pending and at the time of the final hearing, and "always . . . lives anywhere that . . . [Appellant] provide[s] for her." Because Appellant never acquired safe childcare or housing devoid of violent individuals, he thus failed to prioritize the children's safety and well-being. *Id.* at 119. ("A parent's inability to provide adequate care for her children, unstable lifestyle, lack of a home and income, lack of parenting skills, and poor judgment may be considered when looking at the children's best interest."); *see Holley*, 544 S.W.2d at 371–72.

Upon considering the evidence as it relates to Appellant's actions and inactions, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, Appellant's

lack of parental abilities and stability, and his history of abusive conduct, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72.

Accordingly, we overrule Appellant's third issue.

*This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS

JUSTICE

December 18, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.